# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**CHEVELLE PETERS,**                                                **CIVIL ACTION**
     **Plaintiff**

**VERSUS**                                                      **No. 15-6600**

**ST. CHARLES PARISH SCHOOL**           **SECTION "E" (3)**
**DISTRICT, ET AL.**
     **Defendants**

## ORDER AND REASONS

Before the Court is Defendants' motion to dismiss Plaintiff's claims pursuant to Rules 12(b)(6) and 12(b)(5) of the Federal Rules of Civil Procedure.[1] The motion is opposed.[2] For the following reasons, the motion is **GRANTED.**

## BACKGROUND

### A. *Factual Background*

This action is brought by Chevelle Peters on behalf of her minor daughter, T.P. ("Plaintiff"). On December 9, 2014, the Plaintiff allegedly slipped and fell on a slippery substance on the floor of her seventh-grade classroom at Harry Hurst Middle School.[3] As a result of the accident, the Plaintiff alleges that she sustained injuries to her knee and leg.[4] Due to the extent of her injuries, the Plaintiff's treating physician restricted her from using the stairs and participating in physical education.[5] The school agreed to provide

---

[1] R. Doc. 52.
[2] R. Doc. 53.
[3] R. Doc. 51 at 4.
[4] *Id.* at 6, ¶ 26.
[5] *Id.* at 6, ¶¶ 29–30.

these accommodations.[6] Specifically, the school allowed the Plaintiff to use the elevator, and did not require her to participate in physical education.[7]

The Plaintiff alleges the Defendants refused to provide her these accommodations on two occasions. First, the Plaintiff alleges Tiffany Hall, the Plaintiff's teacher, "refused to allow [the Plaintiff] to go to the office in order to make sure she would be able to use the elevators" and instead instructed the Plaintiff to "wait until [l]unch" to inquire about using the elevator.[8] As a result, the Plaintiff allegedly attempted to walk down the stairs, fell, and exacerbated her injuries.[9] Second, the Plaintiff alleges Michelle Rodriguez, the Plaintiff's physical education teacher, required her to do push-ups as punishment for not having her gym uniform.[10] According to the Plaintiff, both of these instances were a result of discrimination and retaliation because of her disability.

The Plaintiff seeks recovery under Louisiana law for personal injury damages arising out of the slip and fall that occurred on December 9, 2014, and under federal laws for damages due to discrimination and retaliation based on her disability.

B. *Procedural History*

On December 8, 2015, the Plaintiff filed her original complaint.[11] On March 4, 2016, Plaintiff filed her first amended complaint.[12]  On May 16, 2016, Defendants filed a motion to dismiss for failure to state a claim, and a motion to dismiss for lack of prosecution.[13] The Plaintiff filed her second amended complaint on August 17, 2016,[14] and

---

[6] *Id.* at 6, ¶ 31.
[7] *Id.* at 6, ¶¶ 32–33.
[8] *Id.* at 7, ¶ 43.
[9] *Id.* at 7, ¶¶ 46, 48.
[10] *Id.* at 8, ¶¶ 50–55.
[11] R. Doc. 1.
[12] R. Doc. 5.
[13] R. Doc. 36.
[14] R. Doc. 51.

the Defendants' motion to dismiss was dismissed without prejudice. On October 19, 2016, Defendants re-urged their motion to dismiss,[15] which is the basis of this Order.

In her Second Amended Complaint, the Plaintiff brings claims under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, 42 U.S.C. § 1981,[16] 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Louisiana Civil Code articles 2315 and 2316.[17] The Second Amended Complaint names Harry Hurst Middle School and St. Charles Parish School District as defendants. The Plaintiff also names as defendants several St. Charles Parish School District employees in their individual and official capacities.[18]

At the status conference held in the Court's chambers on January 23, 2017, the Plaintiff represented she is bringing claims against all defendants only for the following:

1. Section 504 of the Rehabilitation Act of 1973;

2. Title II of the Americans with Disabilities Act ("ADA");

3. 42 U.S.C. § 1981;

4. 42 U.S.C. § 1983;

5. 42 U.S.C. § 1985; and

6. Louisiana Civil Code article 2315.[19]

At the status conference, the Plaintiff voluntarily dismissed all claims against Monica Ayton, because she was never properly served.[20]

---

[15] R. Doc. 52.

[16] In the Second Amended Complaint, the Plaintiff states she brings a retaliation claim under 34 C.F.R. § 100.7(e), which does not provide a private right of action. At the status conference on January 24, 2017, Plaintiff's counsel informed the Court and defense counsel that her retaliation claim is brought pursuant to 42 U.S.C. § 1981. *See* R. Doc. 54.

[17] R. Doc. 51.

[18] The Plaintiff names teachers Michelle Rodriguez, Monica Ayton, and Tiffany Hall, and Principal Steven Gutierrez as defendants.

[19] R. Doc. 54.

[20] *Id.*

Following the status conference held on January 23, 2017, the Court ordered the parties to file additional briefing with respect to the Plaintiff's remaining claims.[21] The Defendants filed a reply to the Plaintiff's opposition to the motion to dismiss on February 1, 2017.[22] On February 3, 2017, the Plaintiff filed a sur-reply in further opposition to the Defendants' motion to dismiss.[23]

In her sur-reply to Defendants' reply in support of their motion to dismiss, the Plaintiff voluntarily dismissed all claims pursuant to the ADA and Section 504 of the Rehabilitation Act against the school employees.[24] The Plaintiff also voluntarily dismissed all claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against all defendants.[25] The Plaintiff further clarified that her claim under Civil Code article 2315 is inclusive of negligent hiring, supervision, and retention.[26]

Accordingly, the remaining claims are those against the St. Charles Parish School District under Title II of the ADA and Section 504 of the Rehabilitation Act, and against the St. Charles Parish School District and its employees in their official capacities under 42 U.S.C. § 1981.[27] The Plaintiff also asserts state-law claims for negligence against all

---

[21] R. Doc. 54.
[22] R. Doc. 57.
[23] R. Doc. 59.
[24] R. Doc. 59 at 1.
[25] *Id.* at 2.
[26] *Id.*
[27] The Plaintiff does not make any allegations with respect to Harry Hurst Middle School. Claims pursuant to Title II of the ADA and Section 504 may be brought only against a "public entity." The ADA defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131. Section 504 applies to "programs or activities," which includes "local educational agencies." 29 U.S.C. § 794(b). A "local educational agency" for the purposes of the Rehabilitation Act is defined as a "public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State . . . ." 20 U.S.C. § 7801(30). As a result, the Court will construe the Plaintiff's claims as being against St. Charles Parish School District.

parties under Louisiana Civil Code article 2315. Defendants seek to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 12(b)(5).[28]

## STANDARD OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[29] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] However, the court does not accept as true legal conclusions or mere conclusory statements,[32] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[33] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[34]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[35] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[28] R. Doc. 52.

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[31] *Id.*

[32] *Id.*

[33] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[34] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[35] *Twombly*, 550 U.S. at 555.

'show[n]'—that the pleader is entitled to relief."[36] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[37]

## LAW AND ANALYSIS

### I.    <u>Rule 12(b)(5) Motion to Dismiss for Failure to Timely Serve</u>

"Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not timely made in accordance with Federal Rule of Civil Procedure 4 or was not properly served in the appropriate manner."[38] "In the absence of valid service of process, proceedings against a party are void."[39]  The party responsible for serving has the burden of showing that service was valid in the face of a 12(b)(5) challenge.[40]

> Rule 4(m) provides in part:
>
> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[41]

 Thus, a Court faced with a defendant's Rule 12(b)(5) motion to dismiss for failure to timely serve must undertake a two part inquiry.[42]  First, the Court must determine if the plaintiff can show "good cause" for its failure to timely serve. If good cause exists, the Court is required to extend the 90-day window for service of process.[43] "If good cause does not exist, the Court may, in its discretion, decide whether to dismiss the case without

---

[36] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[37] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).
[38] *Wallace v. St. Charles Parish Sch. Bd.*, 2005 WL 1155770, at *1 (E.D. La. 2005).
[39] *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).
[40] *Signs Supplies v. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).
[41] Fed. R. Civ. P. 4(m).
[42] *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).
[43] *Id.*

prejudice or extend time for service."[44] "The district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process."[45]

The Court does not need to address whether the Plaintiff has demonstrated "good cause" for her failure to properly serve the Defendants within the 90-day window provided by Rule 4(m). Even assuming, for the sake of argument, that "good cause" did not exist for the untimely service, the Court has broad discretion in determining whether dismissal for failure to timely serve is warranted, and also whether to extend time for service. Service has been perfected in this case—albeit late—and the Court does not find that dismissal is warranted for the now-repaired defect in service. The Court does not condone the actions of Plaintiff's counsel, but recognizes that the Plaintiff herself did not cause the delay in service, that the Defendants would not be prejudiced in any meaningful way by allowing this late service to stand, and that there is no indication that the failure to timely serve was intentional.[46] The Court will not dismiss the Plaintiff's complaint on the grounds that it was served outside of Rule 4(m)'s 90-day window.

II.    **Rule 12(b)(6) Motion for Failure to State a Claim**

   a.   *Plaintiff's Claims Under Title II of the ADA and Section 504 of the Rehabilitation Act*

The Plaintiff brings claims against the St. Charles Parish School District pursuant to Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").[47] Title II of the ADA protects against disability discrimination in the provision of public services, and provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

---

[44] *Id.*
[45] *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986).
[46] *See Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326–27 (5th Cir. 2008).
[47] R. Doc. 51.

programs, or activities of a public entity, or be subjected to discrimination by any such entity.[48]

Section 504, on the other hand, protects against disability discrimination by recipients of federal funding, and provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .[49]

Both Title II of the ADA and Section 504 provide a plaintiff a private right of action.[50]

The elements of a claim under Title II of the ADA are that: (1) the plaintiff is a qualified individual within the meaning of the ADA; (2) the plaintiff is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by a public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of her disability.[51] "[A] cause of action is stated under § 504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program."[52] Because Section 504 closely tracks the language of the ADA, courts analyze the claims together.[53]

The Plaintiff must first allege that she has a "disability," thus making her a qualified individual under the ADA and Section 504. The ADA defines a "disability" as "a physical

---

[48] 42 U.S.C. § 12132.

[49] 29 U.S.C. § 794.

[50] *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) ("It is established that Title II of the ADA and § 504 of the Rehabilitation Act are enforceable through an implied private right of action.").

[51] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

[52] *Estate of A.R. v. Muzyka*, 543 F. App'x 363, 365 (5th Cir. 2013) (quoting *D.A. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010)).

[53] *Id.* at 364–65 (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)); *see also D.A.*, 629 F.3d at 453 ("Because this court has equated liability standards under § 504 and the ADA, we evaluate [the plaintiff's] claims under the statute together." (citations omitted)).

or mental impairment that substantially limits one or more major life activities."[54] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[55] The Plaintiff alleges she suffered injuries to her knee and leg, which "limit[] her ability to walk."[56] The Plaintiff has therefore sufficiently alleged the first element of a claim under Title II of the ADA and Section 504 of the Rehabilitation Act.

With respect to the second and third elements of the ADA and Section 504, the Plaintiff alleges she was denied the benefits of the school program because she was not given access to the school's elevator and she was instructed to do push-ups as punishment in physical education class. To state a cause of action under Section 504 and the ADA, the Plaintiff must allege "that a school district *has refused to provide* reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program."[57] The Plaintiff's allegations are inconsistent in this respect. The Plaintiff alleges her physician restricted her from "using the stairs" and "physical education."[58] According to the Plaintiff, "the school stipulated that they would not only adhere to the doctor's restrictions but they would also [provide] additional accommodations[,] such as [receiving] assistance to and from class[] [and] being dismissed [five] minutes early from class."[59] The Plaintiff alleges she "was allowed to use the elevators" and did not "physically

---

[54] 42 U.S.C. § 12102(1)(A). Similarly, under Section 504, a handicapped person is "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3.
[55] *Id.* at § 12102 (2)(A).
[56] R. Doc. 51 at 3, ¶ 13.
[57] *D.A.*, 629 F.3d at 453 (emphasis added).
[58] R. Doc. 51 at ¶¶ 29–30.
[59] R. Doc. 51 at ¶ 31.

participate in physical education,"[60] but the additional accommodations "were [not] actually consistently provided."[61] Nowhere in her complaint does the Plaintiff allege the St. Charles Parish School District refused to provide reasonable accommodations so that she could receive the full benefits of the school program. Instead, the Plaintiff admits "[t]he school sent an email to the staff regarding [her] injuries and the accommodations that were in place, specifically the use of the elevator."[62] The Plaintiff fails to show the St. Charles Parish School District refused to provide reasonable accommodations.

The Fifth Circuit "used the term 'refusal' because the statute requires intentional discrimination against a student on the basis of [her] disability."[63] To recover damages under the ADA or Section 504, a plaintiff must prove the discrimination was intentional.[64] "Facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or [the] ADA against a school district."[65] Neither the ADA nor Section 504 create "general tort liability for educational malpractice."[66]

The Plaintiff has failed to set forth factual allegations in support of her claim that would entitle her to relief with respect to demonstrating the St. Charles Parish School District intentionally discriminated against her on the basis of her disability. None of the facts alleged allow this Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. With respect to the allegation involving Tiffany Hall,

---

[60] R. Doc. 51 at ¶¶ 32–33.
[61] R. Doc. 51 at ¶ 32.
[62] R. Doc. 51 at ¶ 41.
[63] *D.A.*, 629 F.3d at 454.
[64] *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002). "[A]cts of negligence do not come within the ambit of the ADA." *Norman v. TDCJ-ID*, No. 6:06-403, 2007 WL 3037129, at *5 (E.D. Tex. Oct. 18, 2007) (citing *Foley v. City of Lafayette, Indiana*, 359 F.3d 925, 931 (7th Cir. 2004)), *aff'd sub nom. Norman v. Texas Dep't of Criminal Justice, Institutional Div.*, 293 F. App'x 285 (5th Cir. 2008).
[65] *D.A.*, 629 F.3d at 455.
[66] *Id.* at 454.

the Plaintiff's teacher, the Plaintiff alleges Ms. Hall "refused to allow [her] to go to the office in order to make sure she would be able to use the elevators" and instead, "told [her] to wait until lunch" to go to the office.[67] Even if the Plaintiff was denied the benefit of using the elevator for a short time, the Plaintiff makes no allegation that she was intentionally denied such a benefit *because of her disability*.

The Plaintiff also alleges she was discriminated against when Ms. Rodriguez, the Plaintiff's physical education teacher, required her to do push-ups despite her disability.[68] According to the Plaintiff, Ms. Rodriguez "ordered [her] to run laps to pay for the rental" of a gym uniform.[69] Although the Plaintiff alleges it was her understanding that she "would not be dressing out for P.E." because she was restricted from participating, she contradictorily alleges she "owed a balance for renting a P.E. uniform earlier that week."[70] As a result of her not having a gym uniform, owing a balance for a uniform rental earlier in the week, and not having the $0.50 required to rent a gym uniform, Ms. Rodriguez "ordered [the Plaintiff] to run laps to pay for the rental and past due amount owed."[71] When the Plaintiff informed Ms. Rodriguez she was unable to run, Ms. Rodriguez allegedly instructed the Plaintiff to do push-ups instead.[72] However, here too the Plaintiff fails to allege facts to show these acts were based on intentional discrimination because of the Plaintiff's disability. In fact, the Plaintiff's complaint states the "push-ups were a punishment" for being "sassy and disrespectful."[73] The Plaintiff alleges no facts to suggest Mr. Rodriguez's actions were taken by reason of the Plaintiff's disability.  Although Ms.

---

[67] R. Doc. 51 at ¶ 43.
[68] *See* R. Doc. 51 at ¶¶ 50–65.
[69] R. Doc. 51 at ¶ 53.
[70] R. Doc. 51 at ¶ 53.
[71] R. Doc. 51 at ¶ 53.
[72] R. Doc. 51 at ¶¶ 53–55.
[73] R. Doc. 51 at ¶¶ 55, 57.

Rodriguez's requiring the Plaintiff to do push-ups as punishment may not demonstrate best practices of an educator, it does not give rise to intentional discrimination.

Even accepting the Plaintiff's allegations as true, the Court finds the Plaintiff has failed to make sufficient factual allegations that the St. Charles Parish School District had the required state of mind to be in violation of the ADA or Section 504. The Fifth Circuit has held that plaintiffs must allege and make a showing of "professional bad faith or gross misjudgment" to prevail on a claim under Section 504 or the ADA.[74] The Plaintiff has provided no factual support for the contention that the School District acted in bad faith or exercised gross misjudgment. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[75] As a result, the Plaintiff fails to allege sufficient facts to state a claim under Section 504 or the ADA for intentional discrimination due to her disability. Plaintiff's causes of action under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 must be dismissed.

b. *Plaintiff's Retaliation Claims Under Section 1981*

Title 42, United States Code, Section 1981, provides a remedy for discrimination on the basis of race in the formation and performance of contracts. A claim under Section 1981 can be brought against a state actor or government entity if the plaintiff establishes municipal liability under *Monell*.[76]

---

[74] *D.A.*, 629 F.3d at 455.

[75] *S. Christian Leadership Conference*, 252 F.3d at 786.

[76] *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989) ("[T]o prevail on his claim for damages against the [defendant], petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases."). Because there is no *respondeat superior* liability under § 1981, a plaintiff must establish that the municipal entity itself, and not one of its employees, is responsible for the alleged violation of § 1981 within the meaning of *Monell* and subsequent cases. *Jett*, 491 U.S. at 735–38 ("We thus affirm the judgment of the Court of Appeals to the extent it holds that [a state actor, government entity, or municipality] may not be held liable for its employees' violation of the rights

Section 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1981(b), in turn, defines the phrase "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To state a claim under Section 1981, a plaintiff must allege: (1) that he or she is a member of a racial minority; (2) an intent to discriminate or retaliate on the basis of race by the defendant; and (3) that the discrimination or retaliation concerns one or more of the activities enumerated in the statute.[77] "[N]on-employment retaliation claims under § 1981 are exceedingly rare."[78]

To state a claim for relief under Section 1981, the plaintiff must allege sufficient facts showing the complained-of actions were taken because of his or her race.[79] The Plaintiff has made no allegations that she is a member of a racial minority or that she was discriminated or retaliated against on the basis of race. Because the Plaintiff's complaint

---

enumerated in § 1981 under a theory of respondeat superior."). To succeed in establishing municipal liability, a plaintiff must show that the state actor's, government entity's, or municipality's official policy or custom is discriminatory. *Monell*, 436 U.S. at 694. The Plaintiff has made no allegations that a policy or custom of the St. Charles Parish School District is discriminatory or that such discrimination arose out of the Plaintiff's "right to make contracts," as required by Section 1981.

[77] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994); *Able Sec. and Patrol, LLC v. Louisiana*, 569 F. Supp. 2d 617, 632 (E.D. La. 2008).

[78] *Zastrow v. Hous. Auto Imports Greenway Ltd.*, 789 F.3d 553, 563−64 (5th Cir. 2015).

[79] *See, e.g., Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003); *Mason v. United Air Lines, Inc.*, 274 F.3d 314. 318 (5th Cir. 2001); *Morrison v. Walker*, No. 1:13-CV-327, 2015 WL 11102144, at *9−10 (E.D. Tex. Sept. 24, 2015) ("Morrison has not pled the necessary element that Deputy Barker had an intent to discriminate. . . . At no point does she specifically allege that Defendant Barker intended to discriminate against her on the basis of race when he engaged in the alleged conduct."); *Phillips v. United Parcel Serv.*, No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *5 (N.D. Tex. June 21, 2011) ("Without sufficient factual allegations that the complained of actions were taken because of her race, Plaintiff has failed to state a claim of racial discrimination under . . . § 1981.").

is devoid of factual allegations showing that the St. Charles Parish School district or its employees purposefully treated the Plaintiff differently because of her race, Plaintiff has not stated a plausible claim for relief under Section 1981. Plaintiff's cause of action under 42 U.S.C. § 1981 must be dismissed.

> c. *Plaintiff's State-law Tort Claims*

Plaintiff's remaining claims are state-law claims. More specifically, Plaintiff alleges violations of Louisiana Civil Code article 2315, including claims for negligent hiring, supervision, and retention.[80] The Court possesses only supplemental jurisdiction over Plaintiff's state-law claims.

Title 28, United States Code, Section 1367(c), provides that district courts may decline to exercise supplemental jurisdiction over state law claims if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." Such is the case here, as the Court has dismissed all of the federal claims asserted by the Plaintiff. As a result, the Court will exercise its discretion pursuant to Title 28, United States Code, Section 1367(c), and decline to exercise jurisdiction over Plaintiff's state law claims.

---

[80] *See* R. Doc. 54; R. Doc. 59 at 2.

**CONCLUSION**

**IT IS ORDERED** that the Defendants' motion to dismiss for failure to state a claim is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's federal claims are **DISMISSED WITH PREJUDICE,** and Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

**New Orleans, Louisiana, this 5th day of April, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

15